**In the Interest of K.W. and K.W., Children.**

No. 06–10–00092–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 17, 2011.

Decided Feb. 18, 2011.

Gene Stump, Mount Vernon, for appellant.

Dustanna Hyde Rabe, Hopkins County Atty., Sulphur Springs, for appellee.

Roland M. Fergurson, for K.W. and K.W.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

The biological parents[1] of K.W. and K.W. filed this appeal from the termination of their parental rights, an action sought by the Texas Department of Family and Protective Services (TDFPS). They argue only that the evidence was insufficient to support the trial court's termination order. We affirm the trial court's judgment.

## I. Biological Parents Waived Challenge to Legal and Factual Sufficiency of Predicate Finding Supporting Termination

■ Section 263.405 of the Texas Family Code governs appeals of final orders affecting the parent-child relationship in cases where the children are placed under the care of the TDFPS. Tex. Fam.Code Ann. § 263.405 (Vernon 2008). The statute reads:

> The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial.

Tex. Fam.Code Ann. § 263.405(i).

In this case, the combined motion for new trial and statement of points stated:

> the evidence is legally and factually insufficient to support this Court's judgment. *Statement on which Respondent intends to appeal:*
>
> (a) Petitioner failed to meet its burden of proof by clear and convincing evidence regarding the provisions of Texas Family Code section 161.001(1)(d), (e), (n), and (p); and,
>
> (b) further failed to establish by clear and convincing evidence that the termination of Respondent's rights were in the children's best interest.

To terminate parental rights in Texas, the evidence must establish: (1) a statutory ground for termination; and (2) the termination is in the child's best interest. Tex. Fam.Code Ann. § 161.001(1) (Vernon Supp.2010). In addition to the grounds specified in the statement of points, the trial court also terminated the biological parents' rights on ground (M), that the parents had their "parent-child relationship terminated with respect to another child based on a finding that the [parents'] conduct was in violation of § 161.001(1)(D) or (E), Texas Family Code, or substantially equivalent provisions of the law of another state."

■ Only one predicate finding under Section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d 355, 362 (Tex.2003); *In re N.R.,* 101 S.W.3d 771, 775 (Tex.App.-Texarkana 2003, no pet.). "If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights." *In re D.S.,* 333 S.W.3d 379, 388 (Tex.App.-Amarillo 2011, no pet. h.) (citing *In re S.N.,* 272 S.W.3d 45, 49 (Tex.App.-Waco 2008, no pet.); *Perez v. Tex. Dep't of Protective & Regulatory Servs.,* 148 S.W.3d 427, 434 (Tex.App.-El Paso 2004, no pet.); *In re L.M.,* 104 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2003, no pet.)). Because the trial court's finding with respect to Section 161.001(1)(M) was unchallenged, and can support the order of termination, it is unnecessary to review legal and factual sufficiency arguments as to the other grounds.

---

1. To protect K.W. and K.W., we will not mention the names of their biological parents. We refer to them as Mother and Father.

*In re D.P.R.V.*, No. 04–09–00644–CV, 2010 WL 2102989, at *1 (Tex.App.-San Antonio May 26, 2010, no pet.) (mem.op.) (citing *A.V.*, 113 S.W.3d at 362); *D.S.*, 333 S.W.3d at 388–89; *S.N.*, 272 S.W.3d at 49; *Perez*, 148 S.W.3d at 434; *L.M.*, 104 S.W.3d at 647.

## II. Termination Was in the Children's Best Interest

### A. Standard of Review

■ We now turn to the question of whether clear and convincing evidence established that termination was in the children's best interest. TEX. FAM.CODE ANN. § 161.001; *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex.2009). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *J.O.A.*, 283 S.W.3d at 344.

■ When legal sufficiency of evidence supporting the best interest finding is challenged, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *Id.* at 344–45 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002)). In this bench trial, we assume that the trial court resolved disputed facts in favor of its finding if a reasonable fact-finder could do so, but disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *Id.*; *In re J.A.W.*, No. 06–09–00068–CV, 2010 WL 1236432, at *2 (Tex.App.-Texarkana Apr. 1, 2010, pet. denied) (mem.op.).

■ In reviewing for factual sufficiency, we give due consideration to evidence the court could reasonably have found to be clear and convincing. *J.A.W.*, 2010 WL 1236432, at *2. If, on review of the entire record, we conclude that the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* (citing *J.F.C.*, 96 S.W.3d at 266).

### B. Best Interest Analysis: The Holley Factors

■ In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors found in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). Those factors include: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the plans for the children by these individuals; (6) the stability of the home; (7) the acts or omissions of the parents which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parents. *Id.*; *J.A.W.*, 2010 WL 1236432, at *4.

The *Holley* factors are not exhaustive, and no single consideration is controlling. *J.A.W.*, 2010 WL 1236432, at *4 (citing *In re A.B.*, 269 S.W.3d 120, 126 (Tex.App.-El Paso 2008, no pet.)). Nor would the judge in this case be required to consider all of them. *Id.* (citing *Holley*, 544 S.W.2d at 372). "Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child." *Id.* "On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support a finding." *Id.*

### C. Analysis of Holley Factors Indicate Termination Was in the Children's Best Interest

The children were two and ten months old at the time they were taken by Child

Protective Services (CPS), a division of the TDFPS. Although there was no evidence of their desires, we note that the children were placed in foster care in the prospective adoptive home of Seth and Mary Mearig. The Mearigs were "in their twenties," did not have any children, were well educated, stable, and had a nice home. Seth testified he is a civil engineer and Mary is an architect. The children were described as "bonded with them," and they called Seth and Mary "Mom and Dad." Seth testified the children were "well-integrated into our family," described a pleasant daily routine experienced by the children in their home, and told the court he "would absolutely adopt the boys." During a recent visit between the children and Mother, "[u]pon the oldest [three-year-old] child seeing his mother, he did not recognize her. He was a bit taken back." The youngest, one-year-old child "appeared like he really didn't know what was going on."

Due to the children's young age, the trial court could determine that the emotional and physical needs of the children now and in the future were great. Although Mother and Father may not have placed the children in physical danger, there was some evidence to suggest that the actions of Mother and Father could lead to emotional danger to the children. Mother's and Father's parental rights had been previously terminated with respect to an older child, A.B.[2] During the termination proceeding for A.B., Father was incarcerated and Mother was arrested several times and had tested positive for drugs. She became pregnant with K.W. before her parental rights to A.B. were terminated. According to John Watkins, a TDFPS investigating supervisor, Mother "tested positive at least three different times while she was pregnant with [K.W.]."

After K.W. and K.W. were born, CPS was called when police found Mother hosting "an alleged party with a lot of underage drinking going on." Mother was arrested for possession of marihuana. While CPS was involved with the case, both Mother and Father admitted to Watkins that they were using drugs. However, when the issue of in-patient drug treatment arose, Father denied drug use. Mother and Father tested positive for cocaine use after the children were removed. Father, who was on community supervision for sexual assault of Mother when she was underage, was later arrested in violation of his community supervision and was incarcerated until TDFPS brought suit for termination of parental rights. Mother was arrested and released several times prior to, and after, suit was brought. On one occasion, she received a twelve-month sentence of incarceration and was released just two months prior to the termination hearing. The trial court could have found that the children would be placed in future emotional danger should the biological parents' behavior of drug use and repeated incarceration continue.

Mother's and Father's parental abilities were questioned during psychological examinations. Father's examination produced concerns of "significant substance abuse problems," "significant difficulties with intellectual functioning skills and problems with abstract reasoning suggest[ing] he may have difficulty in a parenting role." Mother's evaluation revealed "a significant history of demonstrating problematic skills in terms of parental functioning," and "presence of substance abuse problems along with the perceived history of oppositional behavior."

There was no testimony regarding the Father's plan for the children. On the day of the termination hearing, Mother was

**2.** The child's initials, also K.W., have been altered to avoid confusion.

living at Exodus Ministries, a home for female ex-offenders. At the time of the hearing, there was testimony that Mother was making progress while in Exodus Ministries. She had passed a test to obtain a GED, had completed several certificate courses, was enrolled in parenting and narcotics anonymous classes, and was searching for employment. Her plan was to find employment and to ask Exodus Ministries to provide her with an apartment where she could be reunited with the children.

Mother's and Father's questionable parental ability contributed to the failure to provide a stable home. When K.W. and K.W. were initially taken, Father was unemployed and Mother worked at McDonalds. There was testimony that neither of them made time to attend parenting classes required by CPS. Mother eventually lost her job at McDonalds, Mother and Father were evicted from their apartment, and they were unable to provide a home address to CPS. While the children were initially placed with their paternal grandmother, Mother and Father would miss opportunities for supervised visitation, and were unable to provide necessary financial support for the children's care. Although Exodus Ministries could provide Mother with a two-bedroom apartment, case workers testified there was no stable or safe residence for the children.

Despite any excuses offered, the trial court could find Mother's and Father's actions and omissions set forth above indicated that their existing parent-child relationship was not a proper one.

Considering the *Holley* factors, we conclude that a rational fact-finder could find that clear and convincing evidence established that termination was in the children's best interest. We find the evidence legally and factually sufficient to support the best-interest finding.

### III. Conclusion

We affirm the trial court's judgment.