

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00321-CV

IN THE INTEREST OF D.R. AND
L.A.R., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant V.E. challenges the termination of her parental rights to D.R. and L.A.R. She brings two issues challenging the legal and factual sufficiency of the evidence to support the judgment and her court-appointed counsel's effectiveness at trial. We affirm.

## Background

The Department of Protective and Regulatory Services removed D.R. and L.A.R. from appellant's care on March 30, 2010 based on a report of neglectful supervision. At the time, they had been living in a trailer in Arlington with

----

[1]See Tex. R. App. P. 47.4.

appellant and L.A.R.'s father, J.R. After a trial on June 28 2011, the trial court terminated appellant's rights to both children and J.R.'s rights to L.A.R. Appellant and J.R. both appealed the trial court's judgment, but we dismissed J.R.'s appeal on November 23, 2011.

## Sufficiency of the Evidence

In her first issue, appellant contends that the evidence is legally and factually insufficient to support the endangerment termination grounds found by the trial court and the trial court's finding that termination is in the children's best interest.

## Grounds for Termination

In her brief, appellant challenges the trial court's endangerment findings under subsections (D) and (E) of section 161.001 of the family code; however, she does not challenge the trial court's other reason for termination: its finding under subsection (O) that appellant failed to comply with her court-ordered service plan. *See* Tex. Fam. Code Ann. § 161.001(D), (E), (O) (West Supp. 2011). Thus, we need not review her legal and factual sufficiency challenge to the grounds for termination. *See In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.— Texarkana 2011, no pet.); *In re S.A.G.*, No. 02-09-00125-CV, 2010 WL 1006301, at *5 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.) (mem. op.).

**Best Interest**

**Standard of Review and Applicable Law**

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001 (West Supp. 2011), 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). The following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency;

3

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

>   (A) minimally adequate health and nutritional care;
>
>   (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
>
>   (C) guidance and supervision consistent with the child's safety;
>
>   (D) a safe physical home environment;
>
>   (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and
>
>   (F) an understanding of the child's needs and capabilities; and

4

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.* § 263.307(b); *R.R.*, 209 S.W.3d at 116.

Other, nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)     the desires of the child;

(B)     the emotional and physical needs of the child now and in the future;

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted).

These factors are not exhaustive:  some listed factors may be inapplicable to some cases, and other factors not on the list may also be considered when appropriate.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a

finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

**Analysis**

The evidence showed that at the time of trial, appellant had been using amphetamines for fifteen years, including before she knew she was pregnant with D.R. and while she was caring for both children.[2] Appellant admitted that she was not sober until November 2010, eight months after the removal. She tested positive for drugs more than once while the case was pending, as did J.R., with whom she was still living.

Appellant admitted that before the removal, she and J.R. smoked marijuana around the side of the house while the children played in the front yard and that they would care for the children afterward; appellant admitted that her behavior endangered the children. The evidence also showed that appellant had relinquished guardianship of an older daughter to her paternal grandparents because she was unable to take care of her.

While the case was pending, appellant was discharged from individual counseling for nonattendance,[3] and although she testified that she went to a

---

[2]Appellant said she resumed using drugs about six months after each child was born.

[3]Appellant testified that she never received thorough paperwork and thought she had finished counseling.

6

substance abuse support group once a month, she had not found a sponsor. Appellant also failed to attend court-ordered couples counseling. There was testimony from appellant's caseworker that at the time of trial, fifteen months after removal, she still had not changed the behaviors that led to the removal.

The children were two and five at the time of trial. There was evidence that the children missed their foster parents when sent to live with appellant's mother the summer before trial[4] and that L.A.R. was doing well in foster care. D.R. exhibited some concerning sexual behaviors when placed in foster care and was still exhibiting some after fifteen months; however, she was adjusting to her placement. The Department's plan for the children was adoption, which the foster parents wanted.

At the time of trial, appellant was working part-time in a restaurant and lived rent-free with a nonrelative, Mr. B., for whom she and J.R. worked as live-in caregivers. She used her earnings from Mr. B. to pay rent on the trailer in Arlington from which the children were removed, but she was not living there. Although appellant testified that she got the restaurant job to send her mother daycare money for the children, she never gave any of that money to her mother; she never explained what she did with the money she earned at the restaurant. At the time of trial, appellant had only $85 to her name. Appellant said the

---

[4]Appellant's mother had the children for about a month, but she called the caseworker to take them back to foster care because she could not afford their daycare.

children would be able to live at Mr. B.'s house, but she admitted that if she lost that job, she and the children would have to go back to the trailer.[5] Appellant relied on Mr. B.'s car for transportation.[6] Mr. B. had a stroke the week before trial and was in the hospital at the time of trial.

Appellant also testified that she would not be able to take care of the children until another three or four months after trial. The case had already been pending fifteen months at the time of trial.

J.R. testified that his parents used drugs, were not stable, and could not take care of any children. J.R. tested positive for cocaine and benzodiazepine the month of trial although he denied that he had used any drugs. He did admit smoking marijuana as late as April 2011 and methamphetamine as late as October 2011. Appellant testified that she would not end her relationship with J.R. to keep the children but that she was willing to live separately.

We conclude and hold that the evidence is legally and factually sufficient to support the trial court's finding that termination is in the children's best interest. *See In re C.F.*, No. 02-10-00202-CV, 2011 WL 2518848, at *19 (Tex. App.—Fort

---

[5]When the caseworker made an unannounced visit to the trailer in January 2011, appellant and J.R. were there. The caseworker saw dog feces "all over the place," the house had no electricity, and the refrigerator was full of mold. Appellant testified that she and J.R. were actually living with his grandmother at the time.

[6]Appellant testified that D.R.'s elementary school was "right around the corner" from Mr. B.'s. She had inquired about daycare for L.A.R., but she could not remember the name and had not yet checked it out. J.R. said he could take L.A.R. to daycare on his mountain bike.

Worth June 23, 2011, no pet.) (mem. op.); *In re B.F.*, No. 02-07-00334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.). We overrule appellant's first issue.

### Alleged Ineffective Assistance of Counsel[7]

In her second issue, appellant contends that she did not receive effective assistance of counsel at trial because counsel failed to lay a proper foundation for—and was thus unable to admit—evidence of a private drug test that she contends would refute her caseworker's testimony that she failed a drug test the Thursday before trial[8] and because counsel failed to investigate a "case aid" who "may have testified that the final drug test was actually negative, not positive." Appellant contends that the final drug test administered to her was, "[u]ltimately, the primary issue that the court could rightfully consider" regarding her continuing drug use and that, without it, the Department's "primary evidence would have been negated."

---

[7]Although the State contends appellant waived this issue by failing to include it in the statement of points, the Supreme Court has held that an ineffective assistance of counsel claim can be raised on appeal despite the failure to include it in a statement of points. *In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009) (holding *additionally* that section 263.405(i) is unconstitutional as applied when it precludes a parent from raising a meritorious complaint about the insufficiency of the evidence supporting a termination order).

[8]Although the caseworker testified that she could see a line on the test indicating drug use, appellant testified that there was only a very faint line. Counsel was able to elicit from appellant that she went the same day to Safe at Work and paid for her own urinalysis. Counsel proffered what appellant said was the stat drug screen result from that test, but the trial court sustained the Department's hearsay objection to the evidence.

However, the trial court terminated appellant's rights on three different grounds, one of which was appellant's failure to comply with the court-ordered service plan. And although appellant's drug use factors into the best interest finding, it was not the sole linchpin of the Department's case. Even if appellant's counsel had been able to admit evidence that the drug test in question could not have been positive, the remaining evidence regarding appellant's admitted drug use until at least November 2010—well after the children's removal—of positive test results as late as March 2011, and of her inability to provide a stable home environment for the children is sufficient to support the termination finding and the best interest finding. Accordingly, we conclude and hold that appellant has not shown that she was deprived of a fair trial with a reliable result because she has not shown any prejudice to the defense. *See In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). We overrule appellant's second issue.

## Conclusion

Having overruled appellant's two issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED: March 1, 2012