02-11-321-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00321-CV

 

 


 
 
 In the Interest of D.R. and L.A.R., Children
 
 
  
 
 
  
 
 


 

----------

 

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
V.E. challenges the termination of her parental rights to D.R. and L.A.R.  She
brings two issues challenging the legal and factual sufficiency of the evidence
to support the judgment and her court-appointed counsel’s effectiveness at
trial.  We affirm.

Background

          The
Department of Protective and Regulatory Services removed D.R. and L.A.R. from
appellant’s care on March 30, 2010 based on a report of neglectful
supervision.  At the time, they had been living in a trailer in Arlington with
appellant and L.A.R.’s father, J.R.  After a trial on June 28 2011, the trial
court terminated appellant’s rights to both children and J.R.’s rights to L.A.R. 
Appellant and J.R. both appealed the trial court’s judgment, but we dismissed
J.R.’s appeal on November 23, 2011.

Sufficiency
of the Evidence

          In
her first issue, appellant contends that the evidence is legally and factually
insufficient to support the endangerment termination grounds found by the trial
court and the trial court’s finding that termination is in the children’s best
interest.

Grounds
for Termination

In
her brief, appellant challenges the trial court’s endangerment findings under
subsections (D) and (E) of section 161.001 of the family code; however, she
does not challenge the trial court’s other reason for termination:  its finding
under subsection (O) that appellant failed to comply with her court-ordered
service plan.  See Tex. Fam. Code Ann. § 161.001(D), (E), (O) (West Supp.
2011).  Thus, we need not review her legal and factual sufficiency challenge to
the grounds for termination.  See In re K.W., 335 S.W.3d 767, 769 (Tex.
App.––Texarkana 2011, no pet.); In re S.A.G., No. 02-09-00125-CV, 2010
WL 1006301, at *5 (Tex. App.––Fort Worth Mar. 18, 2010, no pet.) (mem. op.).

Best Interest

Standard of Review and Applicable Law

Termination decisions must be supported by
clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001 (West Supp.
2011), 161.206(a) (West 2008).  Evidence is clear and convincing if it “will
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.”  Id. § 101.007
(West 2008).  Due process demands this heightened standard because termination
results in permanent, irrevocable changes for the parent and child.  In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J., 243
S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a) (West
2008).  The following factors should be considered in evaluating the parent’s
willingness and ability to provide the child with a safe environment:

(1)
the child’s age and physical and mental vulnerabilities;

(2)
the frequency and nature of out-of-home placements;

(3) the magnitude,
frequency, and circumstances of the harm to the child;

 

(4) whether the child
has been the victim of repeated harm after the initial report and intervention
by the department or other agency;

 

(5) whether the child
is fearful of living in or returning to the child’s home;

 

(6) the results of
psychiatric, psychological, or developmental evaluations of the child, the
child’s parents, other family members, or others who have access to the child’s
home;

 

(7) whether there is
a history of abusive or assaultive conduct by the child’s family or others who
have access to the child’s home;

 

(8) whether there is
a history of substance abuse by the child’s family or others who have access to
the child’s home;

 

(9)
whether the perpetrator of the harm to the child is identified;

(10) the willingness
and ability of the child’s family to seek out, accept, and complete counseling
services and to cooperate with and facilitate an appropriate agency’s close
supervision;

 

(11) the willingness
and ability of the child’s family to effect positive environmental and personal
changes within a reasonable period of time;

 

(12) whether the
child’s family demonstrates adequate parenting skills, including providing the
child and other children under the family’s care with:

 

(A)  minimally adequate
health and nutritional care;

 

(B)  care, nurturance, and
appropriate discipline consistent with the child’s physical and psychological
development;

 

(C)  guidance and
supervision consistent with the child’s safety;

 

(D)  a safe physical home
environment;

 

(E)  protection from
repeated exposure to violence even though the violence may not be directed at
the child; and

 

(F)  an understanding of
the child’s needs and capabilities;  and

 

(13) whether an
adequate social support system consisting of an extended family and friends is
available to the child.

Id. § 263.307(b);
R.R., 209 S.W.3d at 116.

Other,
nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:

(A)     the
desires of the child;

(B)     the emotional
and physical needs of the child now and in the future;

 

(C)     the emotional
and physical danger to the child now and in the future;

 

(D)     the
parental abilities of the individuals seeking custody; 

(E)     the programs
available to assist these individuals to promote the best interest of the
child;

 

(F)     the plans for
the child by these individuals or by the agency seeking custody;

 

(G)     the
stability of the home or proposed placement;

(H)     the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and

 

(I)      any
excuse for the acts or omissions of the parent.

Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted).

These
factors are not exhaustive:  some listed factors may be inapplicable to some
cases, and other factors not on the list may also be considered when
appropriate.  In re C.H., 89 S.W.3d 17, 27 (Tex. 2002).  Furthermore,
undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each factor will
not support such a finding.  Id.

Analysis

The
evidence showed that at the time of trial, appellant had been using amphetamines
for fifteen years, including before she knew she was pregnant with D.R. and
while she was caring for both children.[2]  Appellant admitted that
she was not sober until November 2010, eight months after the removal.  She
tested positive for drugs more than once while the case was pending, as did
J.R., with whom she was still living.

Appellant
admitted that before the removal, she and J.R. smoked marijuana around the side
of the house while the children played in the front yard and that they would
care for the children afterward; appellant admitted that her behavior endangered
the children.  The evidence also showed that appellant had relinquished guardianship
of an older daughter to her paternal grandparents because she was unable to
take care of her.

While
the case was pending, appellant was discharged from individual counseling for
nonattendance,[3] and although she testified
that she went to a substance abuse support group once a month, she had not
found a sponsor.  Appellant also failed to attend court-ordered couples
counseling.  There was testimony from appellant’s caseworker that at the time
of trial, fifteen months after removal, she still had not changed the behaviors
that led to the removal.

The
children were two and five at the time of trial.  There was evidence that the
children missed their foster parents when sent to live with appellant’s mother
the summer before trial[4] and that L.A.R. was doing
well in foster care.  D.R. exhibited some concerning sexual behaviors when
placed in foster care and was still exhibiting some after fifteen months;
however, she was adjusting to her placement.  The Department’s plan for the
children was adoption, which the foster parents wanted.

At
the time of trial, appellant was working part-time in a restaurant and lived rent-free
with a nonrelative, Mr. B., for whom she and J.R. worked as live-in caregivers. 
She used her earnings from Mr. B. to pay rent on the trailer in Arlington from
which the children were removed, but she was not living there.  Although appellant
testified that she got the restaurant job to send her mother daycare money for
the children, she never gave any of that money to her mother; she never
explained what she did with the money she earned at the restaurant.  At the
time of trial, appellant had only $85 to her name.  Appellant said the children
would be able to live at Mr. B.’s house, but she admitted that if she lost that
job, she and the children would have to go back to the trailer.[5] 
Appellant relied on Mr. B.’s car for transportation.[6] 
Mr. B. had a stroke the week before trial and was in the hospital at the time
of trial.

Appellant
also testified that she would not be able to take care of the children until another
three or four months after trial.  The case had already been pending fifteen
months at the time of trial.

J.R.
testified that his parents used drugs, were not stable, and could not take care
of any children.  J.R. tested positive for cocaine and benzodiazepine the month
of trial although he denied that he had used any drugs.  He did admit smoking
marijuana as late as April 2011 and methamphetamine as late as October 2011.  Appellant
testified that she would not end her relationship with J.R. to keep the
children but that she was willing to live separately.

We
conclude and hold that the evidence is legally and factually sufficient to
support the trial court’s finding that termination is in the children’s best
interest.  See In re C.F., No. 02-10-00202-CV, 2011 WL 2518848, at *19
(Tex. App.––Fort Worth June 23, 2011, no pet.) (mem. op.); In re B.F.,
No. 02-07-00334-CV, 2008 WL 902790, at *11 (Tex. App.––Fort Worth Apr. 3, 2008,
no pet.) (mem. op.).  We overrule appellant’s first issue.

Alleged
Ineffective Assistance of Counsel[7]

In her
second issue, appellant contends that she did not receive effective assistance
of counsel at trial because counsel failed to lay a proper foundation for––and
was thus unable to admit––evidence of a private drug test that she contends
would refute her caseworker’s testimony that she failed a drug test the
Thursday before trial[8] and because counsel
failed to investigate a “case aid” who “may have testified that the final drug
test was actually negative, not positive.”  Appellant contends that the final
drug test administered to her was, “[u]ltimately, the primary issue that the
court could rightfully consider” regarding her continuing drug use and that,
without it, the Department’s “primary evidence would have been negated.”

However,
the trial court terminated appellant’s rights on three different grounds, one
of which was appellant’s failure to comply with the court-ordered service
plan.  And although appellant’s drug use factors into the best interest
finding, it was not the sole linchpin of the Department’s case.  Even if
appellant’s counsel had been able to admit evidence that the drug test in
question could not have been positive, the remaining evidence regarding
appellant’s admitted drug use until at least November 2010—well after the
children’s removal—of positive test results as late as March 2011, and of her
inability to provide a stable home environment for the children is sufficient
to support the termination finding and the best interest finding.  Accordingly,
we conclude and hold that appellant has not shown that she was deprived of a
fair trial with a reliable result because she has not shown any prejudice to
the defense.  See In re M.S., 115 S.W.3d 534, 545 (Tex. 2003); see
also Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984).  We overrule appellant’s second issue.

Conclusion

Having overruled appellant’s two issues, we
affirm the trial court’s judgment.

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and GABRIEL, JJ.

 

DELIVERED:  March 1, 2012









[1]See Tex. R. App. P. 47.4.





[2]Appellant said she resumed
using drugs about six months after each child was born.





[3]Appellant testified that
she never received thorough paperwork and thought she had finished counseling.





[4]Appellant’s mother had the
children for about a month, but she called the caseworker to take them back to
foster care because she could not afford their daycare.





[5]When the caseworker made
an unannounced visit to the trailer in January 2011, appellant and J.R. were
there.  The caseworker saw dog feces “all over the place,” the house had no
electricity, and the refrigerator was full of mold.  Appellant testified that
she and J.R. were actually living with his grandmother at the time.





[6]Appellant testified that
D.R.’s elementary school was “right around the corner” from Mr. B.’s.  She had
inquired about daycare for L.A.R., but she could not remember the name and had
not yet checked it out.  J.R. said he could take L.A.R. to daycare on his
mountain bike.





[7]Although the State
contends appellant waived this issue by failing to include it in the statement
of points, the Supreme Court has held that an ineffective assistance of counsel
claim can be raised on appeal despite the failure to include it in a statement
of points.  In re J.O.A., 283 S.W.3d 336, 339 (Tex. 2009) (holding additionally
that section 263.405(i) is unconstitutional as applied when it precludes a
parent from raising a meritorious complaint about the insufficiency of the
evidence supporting a termination order).





[8]Although the caseworker
testified that she could see a line on the test indicating drug use, appellant
testified that there was only a very faint line.  Counsel was able to elicit
from appellant that she went the same day to Safe at Work and paid for her own
urinalysis.  Counsel proffered what appellant said was the stat drug screen
result from that test, but the trial court sustained the Department’s hearsay
objection to the evidence.