

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00613-CV

**IN THE INTEREST A.T.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-01707
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
     Marialyn Barnard, Justice
     Luz Elena D. Chapa, Justice

Delivered and Filed: December 27, 2018

AFFIRMED

Alice[1] appeals the trial court's order terminating her parental rights, arguing there is legally and factually insufficient evidence to support the trial court's order. We affirm.

The Department of Family and Protective Services ("the Department") filed an original petition on August 1, 2017, seeking conservatorship of A.T., who was born in July 2016, and termination of the parental rights of Alice and A.T.'s father. After the full adversary hearing in late August 2017, the trial court ordered Alice to have a psychological evaluation, participate in counseling, attend parenting classes, obtain drug and alcohol assessments, participate in random and scheduled drug testing, and to comply with the service plan prepared by the Department. The

---

[1]To protect the identity of the minor child, we use a pseudonym to refer to the parent and we refer to the child by his initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

court ordered Alice to have weekly supervised visitation with A.T. and to pay $100.00 a month in child support.

A.T. was placed with Alice's mother and stepfather during the case. Initially, the primary permanency goal was family reunification. Later, because Alice failed to keep in contact with her caseworker and failed to make progress on addressing the reasons for A.T.'s removal, the Department began planning for possible adoption by a relative. The trial date for this case was set for May 24, 2018; however, the court granted Alice's motion for continuance so that she may have "more time to complete her services." The case was tried to the court on August 23, 2018. At the conclusion of the trial, the court orally rendered an order terminating Alice's parental rights, finding by clear and convincing evidence that termination of her rights is in A.T.'s best interest and that termination is authorized by sections 161.001(b)(1)(N) (constructive abandonment); (O) (failure to comply with plan of services); and (P) (used controlled substance in a manner that endangered child and failed to complete substance abuse treatment program) of the Texas Family Code. The trial court made the same findings in its written Order of Termination, but in addition found that termination was authorized by section 161.003 of the Texas Family Code. Alice timely filed a notice of appeal. On appeal, Alice argues the evidence is legally and factually insufficient to support the trial court's findings pursuant to section 161.003 and its finding that termination of her rights is in A.T.'s best interest.

## STANDARD OF REVIEW

An order terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE § 161.001(b). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination,

while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable credibility determinations. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

## BEST INTEREST

Alice first argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in A.T.'s best interest. The finding is required to support termination under section 161.003 or under any of the subsections of section 161.001(b).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). A court must also presume that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest

determination, the factfinder looks at the entire record and considers all relevant circumstances. *See In re C.H.*, 89 S.W.3d at 27-29. And, in determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code.[2] In addition to these statutory factors, a court may consider evidence about the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see In re C.H.*, 89 S.W.3d at 27. The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. And, although the mere fact that an act or omission occurred in the past does not establish that termination is currently in the child's best interest, a parent's past conduct is probative of her future conduct when evaluating the child's best interest. *See In re O.N.H.*, 401 S.W.3d at 684.

---

[2]These factors include: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the magnitude, frequency, and circumstances of the harm to the child; whether the child has been the victim of repeated harm after intervention by the department; whether the child is fearful of returning to the child's home; the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; whether there is a history of abusive conduct by the child's family or others who have access to the child's home; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills; and whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

*The evidence*

The Department's investigator, Amanda Diaz, and caseworker, Kimberly Garcia, testified that the Department received its first referral about A.T. when he was born in July 2016. The referral was made because of Alice's use of marijuana and methamphetamines during her pregnancy. The Department received another referral in July 2017, alleging Alice was using marijuana while caring for A.T., who was then one year old. Investigator Diaz testified Alice admitted to having a history of anxiety and depression and self-medicating with drugs. Diaz also testified that Alice admitted to smoking marijuana in A.T.'s presence and while she was caring for the child. Diaz testified the Department offered family based services to Alice, but she was not compliant. As a result, this suit was filed in August 2017.

Kimberly Garcia testified she communicated with Alice after the case was filed, developed a service plan, and set up services for her. The plan required Alice to complete drug and psychological assessments and to follow the resulting recommendations; complete a parenting class; submit to random drug testing; and obtain and maintain employment and safe and suitable housing. Garcia testified that Alice was very hostile and aggressive with her, and through the end of 2017, Garcia had difficulty contacting Alice because she had sporadic and unreliable telephone service. Garcia testified that Alice did not engage in services at all until February 2018, when Alice completed a psychological evaluation and drug assessment. As a result, Alice was required to engage in counseling services and to complete inpatient drug treatment. Garcia set up these services and a new parenting class for Alice. Because it appeared Alice was beginning to engage in services, the trial court granted Alice's motion for continuance of the May 2018 trial setting so she may have "more time to complete her services." However, the evidence established that Alice did not take advantage of the additional three months provided to her.

After Alice's February drug assessment, she was required to complete inpatient drug treatment at Alpha home. Garcia testified that Alice repeatedly refused to do any inpatient treatment. Garcia therefore obtained a referral for Alice to receive outpatient treatment. Alice did not do an intake for outpatient treatment until the week of trial, and she had not yet begun treatment on the day of trial, August 23, 2018.

Garcia testified she sent Alice for urine analyses and hair follicle testing on multiple occasions throughout the case, but Alice did not submit any samples for testing during the entire year the case was pending. Alice disputed Garcia's testimony, stating she had submitted a hair follicle for testing on the Friday before trial. Alice testified she did not submit samples "at the beginning" of the case because she did not have an appropriate form of identification. Garcia testified that Alice denies using drugs, but that Garcia has no way of knowing whether she is still using.

Alice was also required to complete a parenting class and engage in individual counseling to address the issues that led to the removal of A.T. Garcia testified Alice began counseling services earlier in 2018, but she was dropped from the program in July after having missed more than three sessions. Garcia testified Alice's therapist told her they had been unable to address any of Alice's issues because he had not seen her enough. The week of trial, Alice enrolled in counseling and a parenting class at Guardian House.

At the time of trial, Alice was pregnant, was not employed, and did not have stable housing. Garcia testified that when she saw Alice about a month before trial, Alice had a black eye and admitted she was in a violent relationship with the father of her unborn child. Alice told Garcia they were living at his aunt's house. According to Alice, she is still living with the aunt of the father of her unborn child; however, she testified she was no longer in a relationship with the father. She testified that she lost her job in April because of her pregnancy and that she had not

worked since then. She also testified she had plans to begin training and obtain a job after she gives birth.

A.T. lived with his maternal grandmother and step-grandfather throughout the case. Garcia testified that A.T. has an orthopedic issue with his legs that has required medical care and therapy, but that he has made substantial progress. Additionally, A.T. has a delay in his speech communication, for which he receives weekly therapy, and he will need to continue therapy for at least a year. Garcia testified A.T.'s maternal grandparents keep up with all of A.T.'s medical and therapeutic appointments and are meeting all of his needs. She testified A.T. is thriving and happy in the home. She also testified that the grandparents are both willing and licensed to adopt A.T. if the parents' rights were terminated. Alice testified she did not want A.T. to be exposed to domestic violence and that she wanted A.T. to stay with her parents for the time being; however, she did not want her rights to be terminated.

Garcia testified that fifty-two one-hour visits between Alice and A.T. were scheduled during the pendency of the case. Alice attended half of them. Garcia testified that early in the case, Alice missed numerous visits without calling or providing any excuse. Recently, Alice told Garcia she was missing visits because of illness related to her pregnancy. Garcia testified the visits would have been rescheduled had Alice provided some sort of documentation from her doctor, but she did not. Garcia testified she observed the visits and, for the most part, Alice conducted herself appropriately. According to Garcia, Alice did not talk to A.T. much and became frustrated with him quickly. On several occasions, Alice tried to spank A.T. when she felt he was not listening to her. Alice did not provide any monetary support for A.T. during the case.

Alice testified one of the reasons she did not complete her services was that she frequently did not have telephone service, making it difficult to communicate and set up appointments. In addition, she had an unreliable vehicle and taking the bus was too hot for her when she is pregnant.

Alice also admitted she had smoked marijuana while A.T. was in her care and that the house smelled like smoke. However, she testified she did not believe she harmed or neglected A.T. in any way because he was in a different area of the house from where she was smoking. Alice testified her rights should not be terminated because she has a bond with her son and had begun to engage in services. She testified she was aware she was not financially able to care for A.T. at the time of trial, she believed her mother and stepfather were caring for him well, and believed A.T. could wait for her to become stable.

*Discussion*

The evidence presented to the trial court, a year after A.T. was removed from Alice's care, established clearly and convincingly that Alice remained unable to provide a safe and stable environment for A.T. Alice's failure to engage in services demonstrated an unwillingness to address the issues that led to the removal of A.T. from her care. The evidence established that Alice lacked the skills to parent appropriately — she failed to take a parenting class, she was involved in a violent relationship while the case was ongoing, and she admitted at trial that she did not know what she is doing in terms of parenting. Further, Alice did not obtain treatment for her drug abuse issues while the case was pending, she failed to submit to drug tests, and she remained of the opinion at the time of trial that smoking marijuana while caring for an infant is not neglect and does not harm the child, so long as the child is in a "different area of the house." Although Alice registered for some services the week of trial, she had not yet engaged in them. Moreover, she had once before shown a willingness to engage, but had failed to follow through after the court granted her motion for continuance. We hold the trial court could have reasonably concluded that Alice has not shown a willingness or ability to meet A.T.'s emotional or physical needs now or in the future.

The undisputed evidence established that A.T. is in a safe and stable home with his grandparents, who are willing and licensed to adopt him. They take care of his needs and he is happy and thriving. In light of all of the evidence, we hold the trial court could have reasonably formed a firm belief or conviction that termination of Alice's parental rights is in A.T.'s best interest and the evidence is therefore both legally and factually sufficient to support the finding.

## SECTION 161.003

Alice next argues the evidence is legally and factually insufficient to support the trial court's findings to support termination pursuant to section 161.003 of the Family Code. That section provides an alternative ground for terminating a parent's rights. *See* TEX. FAM. CODE § 161.003. However, Alice does not challenge the trial court's findings that she constructively abandoned A.T., failed to comply with her plan of services, and used a controlled substance in a manner that endangered A.T. and failed to complete a treatment program. *See id.* § 161.001(b)(1)(N), (O), & (P). Only one predicate ground for termination is necessary to support an order terminating parental rights when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). When the trial court has found multiple predicate grounds for termination, "we will affirm based on any one ground because only one is necessary for termination of parental rights." *In re R.R.C.*, No. 04-17-00306-CV, 2017 WL 4413205, at *2 (Tex. App.—San Antonio Oct. 4, 2017, pet. denied) (mem. op.) (quoting *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)). Because Alice does not challenge the trial court's findings supporting termination under paragraphs (N), (O), or (P) of section 161.001(b)(1), we need not review the sufficiency of the evidence to support the section 161.003 findings. *See id.*

The trial court's order of termination is affirmed.

Luz Elena D. Chapa, Justice