

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-24-00310-CV

___

IN THE INTEREST OF S.F., A CHILD

___

On Appeal from the County Court at Law
Moore County, Texas
Trial Court No. CL40-23, Honorable Jerod Pingelton, Presiding

___

February 6, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants F.B (Mother) and J.F. (Father) appeal from the Moore County Court at Law's order terminating their parental rights to their four-year-old daughter, S.F.[1] Appellee is the Texas Department of Family and Protective Services. Through a single issue, Mother challenges the sufficiency of evidence supporting the trial court's finding that termination was in S.F.'s best interest. Father brings two issues, challenging the best-interest finding and a statutory predicate ground for termination. We affirm.

___

[1] To protect S.F.'s privacy, we will refer to F.B. as "Mother," J.F. as "Father," and the child by initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

## I. Background

Drug abuse lies at the heart of this case. Mother started using methamphetamine in her thirties and was 42 at the time of trial. Father, who has a documented history of methamphetamine use and continued marijuana consumption, had lost rights to another child in 2016–17 due to methamphetamine use.[2] Their substance abuse ultimately led to S.F.'s removal from their care.

The Department's involvement with this family began in March 2020, when Mother tested positive for unprescribed hydrocodone at S.F.'s birth. By January 2022, the Department opened another investigation after learning Mother was using methamphetamine and hydrocodone. During this period, Mother made allegations of domestic violence and sexual abuse against Father,[3] which Mother later said was untrue.

The situation deteriorated further in early 2023. After her sister's death in January, Mother attempted suicide and entered inpatient mental health treatment. She then entered but quickly left a drug treatment program after just two days.[4] The incident leading to S.F.'s removal occurred in March 2023, when Mother lost consciousness from

---

[2] Even though Father testified he had been "ten years clean" of methamphetamine as of the trial date, he tested positive for marijuana on several occasions, including the first day of trial.

[3] The other evidence of alleged domestic violence was mixed. Department investigator Courtney Jones testified Mother moved to Dumas claiming to escape Father's abuse, while permanency specialist Tiffany Brown expressed no concerns about domestic violence despite Mother's allegations. Family services worker Amanda Henry reported Father had prior domestic violence issues, and added that, according to Mother, Father became "evil" when using methamphetamine.

[4] Mother entered treatment because, in her words, "I have a drug addiction."

fentanyl use while driving with S.F. in the vehicle.[5]  The Department placed S.F. in temporary care while Mother returned to inpatient treatment for withdrawal symptoms.

The record reflects that following S.F.'s removal, neither parent demonstrated sustained progress.  Mother's service plan obligated her to maintain a drug-free lifestyle.  However, Mother's fair follicle tests showed positive results for various substances: in May 2023 (methamphetamine and hydrocodone); December 2023 (amphetamines, methamphetamine, codeine, and hydrocodone); March 2024 (hydrocodone).  Mother claimed six months of sobriety at trial though testifying she used methamphetamine and fentanyl in February 2024, and hydrocodone on Easter Sunday 2024.  Department permanency specialist Brown testified Mother's diagnosis was "severe" and required long-term treatment.  According to Brown, the purpose of drug treatment programs for parents with substance abuse problems is to "learn skills on how to cope with the things that make them do the drugs, give them alternatives, help them process the things that lead up to them picking up the drug."  Brown testified she could not gauge Mother's sobriety.

Father's compliance with court orders was similarly problematic.  His service plan required maintaining a drug-free lifestyle, yet he tested positive for marijuana multiple times throughout 2023 and 2024, including on the first day of the final hearing.[6]  Although

---

[5] The Department's service plan emphasized concerns about Father's failure to protect S.F., noting he knowingly left her in Mother's care despite awareness of her substance abuse—a decision that culminated in Mother's overdose while driving with S.F. in the vehicle.

[6] Father registered positive drug-tests on April 4, 2023 (marijuana and marijuana metabolite; metabolite level 8.9), May 3, 2023 (marijuana level 764), August 21, 2023 (marijuana level 1154), December 4, 2023 (urine and hair; urine marijuana level 249; hair metabolite level 24.7), and August 19, 2024 (marijuana level 372).

Father claimed he only used legal CBD through a vape device, his most recent test showed positive results for marijuana rather than just metabolites. Father also missed several required drug screens, blaming his work schedule, and was uncooperative with efforts to arrange testing when he traveled. Brown suggested Father's efforts to arrange testing while traveling was uncooperative, noting "we can send a drug screen to any place in the U.S. All I need is a zip code. He has not provided me with a zip code any time that I've asked."

After completing couples counseling, Mother and Father separated, with Mother remaining in their leased Amarillo home and Father moving in with his mother. Though Father's mother's home had several bedrooms, the Department rejected it as a placement option because another adult child living there had a pending sexual assault charge. Mother proposed coparenting but had not investigated daycare options or even seen Father's current residence. Father confirmed he did not have in mind a place to establish as his own home but was "looking into it[.]" He suggested his mother and grandparents could help with childcare despite his mother's home being deemed unsuitable. The specifics of a coparenting plan were not presented in evidence.

Mother testified about a full-time job with Visiting Angels, where she earns $13 per hour. Father is a heavy machinery operator, making $4,000 to $5,000 per month. Father acknowledged his work sometime takes him out of town. Brown expressed concern about the absence of a daycare plan for S.F.

As for other services, Mother completed parenting classes, a psychological evaluation, a women's domestic violence group assessment, rational behavior therapy,

4

individual counseling, and couple's counseling.  Mother acknowledged that after the first setting of final hearing she was arrested and indicted for debit card abuse; she denied any wrongdoing and awaited trial.

Meanwhile, S.F. (age 4 at the time of final hearing) has thrived in foster care. Though initially behind developmentally when removed, she has made significant progress, attends pre-K, and receives speech therapy.  Brown described her as smart and stubborn with good relationships with other children in her foster home.  Her foster parents wish to adopt if she becomes eligible.

## II. Analysis

We review the legal and factual sufficiency of evidence supporting termination under well-established standards.  *See In re A.M.,* No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.).  The trial court, as factfinder, exclusively judges witness credibility and weighs evidence.  *In re H.E.B.,* No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.).  It may believe all, some, or none of a witness's testimony. *In re K.R.,* No. 07-23-00373-CV, 2024 Tex. App. LEXIS 1467, at *7 (Tex. App.—Amarillo Feb. 28, 2024, pet. denied) (mem. op.).

A child's best-interest determination requires a broad evaluation of facts and circumstances and warrants significant discretion in the trial court.  *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding).  While courts may discuss evidence within the

5

context of the factors articulated in *Holley v. Adams*,[7] no unique set of elements must be proven. *In re L.C.C.*, 667 S.W.3d 510, 513 (Tex. App.—Eastland 2023, pet. denied). Indeed, evidence need not touch every *Holley* factor for a court to form a firm belief that termination serves a child's best interest, particularly when undisputed evidence shows the parental relationship endangered the child's safety. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005). Additionally, unchallenged evidence supporting the predicate grounds for termination can support a best-interest determination. *In re M.D.,* No. 07-21-00149-CV, 2021 Tex. App. LEXIS 7217, at *1–2 (Tex. App.—Amarillo Aug. 30, 2021, pet. denied) (per curiam, mem. op.); *see also In re T.C.,* No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (noting that a parent who opts to forgo a challenge to predicate ground findings tacitly concedes that sufficient evidence supports those findings).

### III. Mother's Appeal

Mother challenges only the trial court's best-interest finding. Here, the trial court's unchallenged findings that Mother endangered S.F.—exemplified by her pattern of drug use and intoxicated driving with S.F.—strongly support its best-interest determination. See *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) (explaining that drug use coupled with evidence of danger to child demonstrates risk to parenting ability). Mother's drug use impacts multiple *Holley* factors, particularly given S.F.'s age and complete dependence

---

[7] 544 S.W.2d 367, 371–72 (Tex.1976) (listing: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.).

on her as caregiver should they be reunited.  *See In re O.J.C.,* No. 04-23-00126-CV, 2023 Tex. App. LEXIS 5944, at *7–8 (Tex. App.—San Antonio Aug. 9, 2023, pet. denied) (mem. op.).  Of particular concern, Mother continued using illegal drugs after S.F.'s removal and while her service plan was in place—when she knew her parental rights hung in the balance.  This "indicates an inability or unwillingness to prioritize the burdens and responsibilities of parenthood ahead of the desire for intoxication, an impaired condition that is not compatible with the care of a very young child like this one."  *In re A.J.D.-J.*, 667 S.W.3d 813, 825 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

As Shakespeare observed, "what's past is prologue."  WILLIAM SHAKESPEARE, THE TEMPEST, act 2, sc. 1.  Although Mother's six months of sobriety could suggest future abstinence, the trial court could reasonably infer the opposite: that her post-removal drug use and refusal to enter long-term treatment for a "severe" problem shows future relapse is likely.  The decision of which inference to draw lay firmly within the trial court's discretion.  *See In re A.M.,* Nos. 07-18-00047-CV, 07-18-00048-CV, 2018 Tex. App. LEXIS 3688, at *7 (Tex. App.—Amarillo May 23, 2018, pet. denied) (per curiam, mem. op.).

Additionally, Mother presented no viable plan for S.F.'s care beyond suggesting undefined coparenting with Father.  The evidence showed she had not investigated daycare options or even seen Father's current residence.  Her proposed reliance on Father as her sole support system raises particular concern given their ended relationship and evidence about Father's home environment.  Meanwhile, S.F. has thrived in foster care, making significant developmental progress, attending pre-K, receiving needed speech therapy, and forming positive relationships with other children in her foster home.

7

This evidence allows a reasonable inference that the prospect of adoption would provide S.F. the permanence she needs.

## IV. Father's Appeal

Predicate Grounds for Terminating Parental Rights

Father brings two issues: challenging the predicate ground (P) finding and the best-interest determination. A trial court may terminate parental rights under predicate ground (P) if clear and convincing evidence shows the parent used a controlled substance in a manner that endangered the child's health or safety and either: (i) failed to complete court-ordered substance abuse treatment, or (ii) continued abusing controlled substances after completing treatment. TEX. FAM. CODE ANN. § 161.001(b)(1)(P).

Significantly, however, Father does not challenge the trial court's finding under predicate ground (O)—that he failed to comply with court-ordered services.[8] "Unchallenged predicate findings are binding on the reviewing court unless the contrary is established as a matter of law or there is no evidence to support the finding." *In re K.G.,* No. 07-23-00422-CV, 2024 Tex. App. LEXIS 1465, at *4 (Tex. App.—Amarillo Feb. 28, 2024, no pet.) (mem. op.). Sufficient evidence supports the ground (O) finding, including undisputed testimony that S.F. remained in the Department's care for over nine months, as well as evidence that Father repeatedly violated his service plan by testing positive for marijuana throughout the case, failing drug screens, and missing required

---

[8] A trial court may terminate parental rights under subsection (O) when clear and convincing evidence shows the parent failed to comply with court-ordered services while the child was in the Department's conservatorship for at least nine months following removal for abuse or neglect. TEX. FAM. CODE. ANN. § 161.001(b)(1)(O).

tests despite the Department's efforts to accommodate his work schedule. Because Father does not challenge the trial court's finding under ground (O), and a single predicate ground coupled with best interest suffices to affirm termination, we need not address his challenge to predicate ground (P). *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam); *see also In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.); TEX. R. APP. P. 47.1.

Father's challenge to the evidence surrounding predicate ground P is overruled.

Best Interest

Father also challenges the sufficiency of evidence supporting the trial court's best-interest finding. Despite requirements in his service plan, the evidence supports a reasonable finding that Father continued testing positive for marijuana throughout the case. Although Father claimed having only used CBD, his drug test on the first day of trial showed marijuana rather than just metabolites. The trial court was not required to accept Father's explanation.[9]

Beyond evidence of ongoing marijuana use, other evidence raised serious concerns about Father's ability to provide S.F. a safe and stable environment. Despite claiming ten years of sobriety from methamphetamine, Father previously lost custody of another child due to methamphetamine use in 2016–17. Henry recounted that Mother characterized Father as "evil" when using methamphetamine. Father also lacked stable housing at the time of trial and presented no viable childcare plan despite work travel.

---

[9] Marijuana is a controlled substance under Chapter 481 of the Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 481.002(5), § 481.032; *see also Sec. Nat'l Ins. Co. v. Murrell,* No. 02-11-00155-CV, 2012 Tex. App. LEXIS 6370, at *9 (Tex. App.—Fort Worth Aug. 2, 2012, pet. denied) (mem. op.).

Perhaps most troubling, Father knowingly left S.F. in Mother's care while aware of Mother's drug use—a decision that culminated in Mother's overdose while driving with the child. *See In re A.H.,* No. 02-06-00064-CV, 2006 Tex. App. LEXIS 8432, at *8 (Tex. App.—Fort Worth Sept. 28, 2006, no pet.) (mem. op.) (noting that stability and permanence are paramount and that past endangering conduct suggests similar future conduct).

As is true with the evidence regarding Mother, these circumstances implicate multiple *Holley* factors, including S.F.'s present and future emotional and physical needs, potential dangers to S.F., Father's parental abilities, and the stability of the proposed placement. Plus, Father lacks participation in any ongoing support program. The evidence amply supports the trial court's best-interest finding.

## V. Conclusion

Having found sufficient evidence supports the trial court's findings both legally and factually, we affirm the order terminating Mother's and Father's parental rights to S.F. *See In re A.J.R.*, No. 03-19-00661-CV, 2020 Tex. App. LEXIS 2090, at *23 (Tex. App.—Austin Mar. 12, 2020, no pet.) (mem. op.).

Lawrence M. Doss
Justice