

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00039-CV
_____

IN THE INTEREST OF A.S., A CHILD

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 15-0468

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

This is a suit for termination of the parental rights of Dan Smith, the natural father of a male child, A.S.[1] In his appeal, Smith alleges: (1) that the trial court erred in denying his request for a continuance and (2) that the evidence is legally and factually insufficient to support the trial court's finding that Smith had committed acts which support termination of his parent-child relationship with A.S.[2] We affirm the trial court's judgment because we find that the trial court did not err when it denied Smith's request to extend the case on the court's docket and that sufficient evidence supports at least one finding of a statutory ground for termination of Smith's parental rights to A.S.

I.    **Background**

On February 13, 2015, when A.S. was approximately twenty months old, the Texas Department of Family and Protective Services (DFPS) received information that Smith had seen A.S.'s mother, Adelle, being sexually inappropriate with A.S. and A.S.'s sibling. A DFPS caseworker met with the family in regard to the allegations that same month, and the caseworker attempted during March 2015 to meet with the family at that same residence, but was informed that the family no longer lived there. The caseworker then sent a text message to Adelle, only to

---

[1]We refer to the child by his initials and to each of the parents by fictitious names in order to protect the privacy of the child. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).

[2]Smith appears to attempt to restrict his appeal to the findings that Smith had (a) knowingly placed or knowingly allowed A.S. to remain in conditions or surroundings which endangered his physical or emotional well-being, and (b) he engaged in conduct that endangered A.S.'s physical and emotional well-being or that he knowingly placed A.S. with persons who engaged in conduct that endangered his physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E) (West Supp. 2016). For the reasons set out below, we do not restrict ourselves to a review of those findings.

be told that the family was out of town for the Easter holiday. Although the caseworker instructed Adelle via text message to contact DFPS the following Monday, she failed to do so. It was later discovered that Adelle's cell phone had been disconnected.

In an attempt to locate Smith and Adelle, the caseworker contacted several relatives of the family from whom she learned that both Smith and Adelle were "back on drugs." After additional unsuccessful attempts to contact the couple, the caseworker enlisted the help of DFPS Special Investigator Patrick Hill. Hill determined that Smith had been incarcerated on May 5, 2015, in Upshur County, Texas, on drug-related charges.[3]

The record also shows that approximately three and one-half years before DFPS became involved in this case, Smith had been placed on deferred adjudication community supervision for a period of four years as a result of his guilty plea to a charge of possession of methamphetamine. On June 5, 2015, the trial court revoked Smith's deferred adjudication community supervision after finding he had violated the terms of his community supervision by consuming alcohol and by failing to pay his community supervision fees, attorney fees, fines, and court costs. After Smith entered a plea of "true" to the allegations, the trial court found Smith guilty and sentenced him to six years' confinement in prison.[4]

---

[3]Following additional investigation, DFPS learned that Adelle and A.S. were residing at the home of Adelle's maternal grandmother. Adelle admitted that she had moved to Dallas in an effort to evade the DFPS and that she was also using methamphetamine. Adelle submitted to a drug test, and the results showed that Adelle had been using amphetamines, methamphetamines, and marihuana. A.S. was also tested, and his results came back positive for amphetamines and methamphetamines. Adelle's maternal grandmother also had an extensive history with DFPS, which resulted in her losing custody of her own children.

[4]At the time DFPS filed its original petition to terminate his parental rights, Smith was in the midst of serving his prison sentence. The record also shows that Smith had been incarcerated at least four times prior to serving his six-year sentence, including from August 10, 2011, to August 11, 2011; December 26, 2011, to February 13, 2012; January 4, 2013, to February 6, 2013; and February 7, 2013, to May 30, 2014.

On July 9, 2015, DFPS filed its original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship. This is an apparent off-the-shelf petition (which alleges over twenty different grounds for termination, ranging from an allegation that Smith had voluntarily surrendered parental rights and that he had murdered a parent of the child, to allegations that Smith had engaged in conduct or knowingly placed A.S. with persons who engaged in conduct that endangered A.S.'s physical or emotional well-being). The trial court held a hearing on DFPS's petition on April 14, 2016. No evidence of many of the allegations was presented at trial.

Following the hearing, the trial court found by what it deemed to be clear and convincing evidence that it was in A.S.'s best interest to terminate Smith's parental rights and that Smith had committed all of the acts justifying termination as set out in Section 161.001(b)(1), subsections (D), (E), (N), (O), and (Q) of the Texas Family Code.[5] Smith timely filed a notice of appeal.

---

[5]As described by Section 161.001(b)(1) of the Texas Family Code, the listed grounds found by the trial court are that the parent has

> (D)     knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E)     engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> . . . .
>
> (N)     constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> > (i)     the department has made reasonable efforts to return the child to the parent;
> >
> > (ii)     the parent has not regularly visited or maintained significant contact with the child; and

## II.  Smith's Request to Extend the Case on the Court's Docket

Smith contends that the trial court erred when it denied his request to extend the case on the court's docket because "[t]he trial court had a duty to strictly construe the application of [Section 263.401] . . . in favor of the parent." Section 263.401 of the Texas Family Code allows a trial court to retain a case on its docket for up to 180 days if it finds that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE ANN. § 263.401(b) (West Supp. 2016). The trial court is directed to make such findings (if they exist) and to include them in any order granting the extension, along with the new trial date and any further necessary temporary orders. *Id.*

---

> (iii)    the parent has demonstrated an inability to provide the child with a safe environment;
>
> (O)    failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;
>
> . . . .
>
> (Q)    knowingly engaged in criminal conduct that has resulted in the parent's:
>
> (i)    conviction of an offense; and
>
> (ii)    confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;
>
> TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (Q) (West Supp. 2016).

During the April hearing, Smith's counsel informed the trial court that Smith anticipated being released from prison sometime in May and that he "ask[ed] that we hold off on his termination until we terminate the mother's rights as well." The trial court denied his request. Even if we considered counsel's statement as a request to extend, Smith failed to show the existence of extraordinary circumstances or that an extension would be in the best interest of A.S. The trial court did not abuse its discretion when it denied Smith's request to extend.

Smith's first point of error is overruled.

## III.    Sufficient Evidence Supports Statutory Grounds for Termination

### A.    Applicable Law and Standard of Review

The Texas Supreme Court has taken the same position with regard to the termination of parental rights as that expressed by the United States Supreme Court, stating, "[T]he private interest affected is the right of a parent to raise his or her child, which is undeniably 'an interest far more precious than any property right.'" *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). "The natural right existing between parents and their children is of constitutional dimensions." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "This Court is therefore required to 'engage in an exacting review of the entire record to determine if the

6

evidence is . . . sufficient to support the termination of parental rights.'" *Id.* at 919–20 (quoting *A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* at 920 (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26)). "In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (West 2014)); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "This standard of proof necessarily affects our review of the evidence." *L.E.S.*, S.W.3d at 920.

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that" termination of the parent-child relationship was in the best interest of the child. *Id.* (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d

7

836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *H.R.M.*, 209 S.W.3d at 109 (alteration in original) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *see In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### B. Analysis of Scope of Appeal

Some of Smith's enumeration of points of error are a bit confusing. Following the complaint that the trial court did not delay the hearing, the two final points of error challenge first the legal sufficiency and then the factual sufficiency of the evidence "to terminate [Smith]'s parental rights on the issue of best interests of the child." The last part of that sentence would seem to restrict the review only to what pertains to the best interests of the child, but the argument

in the brief appears to attack the sufficiency of the evidence to sustain the findings to terminate only on the grounds set out in Section 161.001(b)(1), subsections (D) and (E). In the interests of justice, we will review both the sufficiency of the evidence to sustain the finding that termination is in the best interests of the child and the findings that Smith has committed acts which justify termination of his parental relationship with A.S.

Although the trial court listed several grounds for termination, it is not necessary for each of the grounds to be sustained because termination can take place if there is evidence to sustain only one ground. "For a trial court to terminate a parent's right to his children, the State must prove by clear and convincing evidence both that: (1) the parent committed *an* act prohibited under Texas Family Code Section 161.001[(b)](1), and (2) termination is in the children's best interest." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012) (emphasis added).

Smith argues that the trial court's findings supporting termination on the statutory grounds of Section 161.001(b)(1), subsections (D) and (E), are not supported by sufficient evidence.[6] *See* TEX. FAM. CODE. ANN. § 161.001(b)(1). Even if that were so, only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.); *In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet). The ground which relies less on a weighing of

---

[6]Smith also argues that there was insufficient evidence to support the trial court's findings that his parental rights to A.S. should be terminated pursuant to Section 161.001(b)(1), subsections (N), (O), and (Q). *See* TEX. FAM. CODE. ANN. § 161.001(b)(1). Because we find the trial court did not err when it found that Smith's parental rights should be terminated pursuant to Section 161.001(b)(1), subsection (Q), we find it unnecessary to address Smith's remaining arguments.

9

the evidence and more on simple mathematical calculation is Section 161.001(b)(1)(Q), and we elect to examine that ground first.

### 1.    Subsection Q

The text of Section 161.001(b)(1)(Q) of the Texas Family Code, quoted previously, sets out that termination may be ordered when the parent has knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense which results in that parent's imprisonment and consequential inability to care for the child for not less than two years from the date of filing the petition. The record plainly shows that the petition was filed July 9, 2015, and that Smith was sentenced to serve a term of six years' imprisonment on June 5, 2015. Smith argued that he had a projected release date of July 4, 2016, and would be eligible for parole on June 28, 2016, both of which would occur well before the expiration of the two-year period set out in Section 161.001(b)(1)(Q). This argument fails to take into account that

> [m]ere introduction of parole-related evidence, however, does not prevent a fact-finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. Parole decisions are inherently speculative, and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely within the parole board's discretion. *See In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.) (stating that a father's "hope that he might be granted early release is pure speculation").

*In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam) (citations omitted).

While it was possible, therefore, for the trial court to take into account the existent possibility that Smith might be paroled within the statutory two-year period, it was also free to count that evidence as mere speculation.

Accordingly, grounds existed for the termination of Smith's parental rights. We find that the evidence was factually and legally sufficient to support the trial court's findings pursuant to Section 161.001(b)(1)(Q). Having found sufficient legal and factual evidence to support that finding, we elect not to review any other findings regarding the grounds for termination.

## IV. Termination Was in A.S.'s Best Interest

We must also decide how to reconcile "a parent's desire to raise [the] child with the State's responsibility to promote the child's best interest." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012). "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet). (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

### A. The *Holley* Factors

In determining the best interests of the child, courts consider the following *Holley* factors:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see E.N.C.*, 384 S.W.3d at 807; *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2016). The list of *Holley*

11

factors is neither inclusive nor exclusive. *N.L.D.*, 412 S.W.3d at 818. Further, we may consider evidence used to support the grounds for termination of parental rights in the best interest analysis. *C.H.*, 89 S.W.3d at 28.

Although Smith contends that the *Holley* factors weigh in his favor, we disagree and determine that they, for the most part, weigh against him.

### 1.      The Desires of A.S.

Smith points out that the State failed to offer evidence as to A.S.'s desires or wishes. Although A.S. is a toddler and is, therefore, unable to articulate his preference, the evidence shows that A.S. has been well cared-for by his placement family and that the family members "love him" and consider him "part of the family." In addition, there is evidence that since the time of his placement, A.S. has progressed developmentally and that he is happy in his current living situation. Even so, there was no evidence presented regarding A.S.'s desires; we find this Holley factor to be neutral. *In re X.L.R.*, 461 S.W.3d 633, 640 (Tex. App.—Texarkana 2015, no pet.) (citing *E.N.C.*, 384 S.W.3d at 808). It has long been held in Texas that facts can be proven by circumstances. *Missouri Pac. Ry. Co. v. Porter*, 11 S.W. 324, 325–26 (Tex. 1889). The uncontroverted circumstantial evidence of A.S.'s placement situation supports the trial court's finding that termination is in A.S.'s best interest.

### 2.      Present and Future Emotional and Physical Needs of A.S.

Smith contends in his brief (but offered no evidence) that he "was meeting [A.S's] needs and will continue to do so." It is almost universally recognized that children need and desire stability and security in order to be emotionally and physically healthy; however, in this case, there

12

is no evidence that Smith ever provided for A.S.'s emotional or physical well-being. The trial court could well have followed the axiom that past behavior is the best predictor of future behavior. Smith's past behavior has appeared to be that Smith placed his own wants and needs well before A.S.'s needs. There was neither any evidence presented to indicate that Smith had previously changed his behavior to benefit the child nor was there any evidence adduced by him regarding plans to substantially change his behavior in an effort to assure A.S.'s emotional and physical needs were met. The closest thing to evidence to that effect is the fact that Smith had enrolled himself in classes while incarcerated to instruct him on being a better parent.

In contrast to the life given A.S. by Smith and Adelle in the past, A.S.'s placement family has clearly provided for A.S.'s emotional and physical needs as evidenced by A.S.'s continued positive developmental growth. Likewise, A.S.'s placement family has agreed to continue providing for him in the future. The evidence on this factor supports the trial court's finding that termination is in A.S.'s best interest.

### 3. Present and Future Emotional and Physical Danger to A.S.

Smith asserts that he protected A.S. in the past and will continue to do so in the future. Contrary to his contention, the evidence shows that Smith's drug use and repetitive arrests resulted in A.S. having been subjected to an extremely unstable home environment. This is evidenced by Smith's current prison term, which was a direct result of a felony drug conviction, a conviction that further illustrates his lack of concern for A.S. Smith was given an opportunity to better A.S.'s circumstances when he was placed on deferred adjudication community supervision. Instead of taking advantage of the opportunity, Smith chose to violate the terms and conditions of his

13

community supervision, thereby leaving A.S. solely in the care of Adelle, a person whom Smith believed had acted in a sexually inappropriate manner with A.S. and A.S.'s sibling. Although Smith did report the sexually inappropriate action taken by Adelle toward A.S. and the other child in her charge, he did not take steps to remove A.S. from the situation. Likewise, Smith was either aware of (or should have been aware of) Adelle's drug use—presumably while she was supposed to be helping with the care and custody of A.S. Certainly, allowing the child to be subjected to continued drug use and sexually inappropriate behavior are acts of exposing A.S. to physical and emotional trauma.

This fact strongly suggest that termination is in A.S.'s best interest.

### 4. Smith's Parental Abilities

In his brief, Smith states that while he "was out of jail, she [sic] put his children's need above everything else. Even while in prison he began courses aimed at regaining his child." Even though Smith makes that assertion, he points to no evidence that his past activity indicated effective parenting abilities, and it is far too soon to gauge if the parenting or responsibility courses that Smith took while in prison will have a beneficial effect on his parenting skills or ability. Likewise, he provided no evidence that demonstrated what courses he took to regain custody of A.S. or the positive results of those who have taken such courses in the past. As with the other matters in these factors, past conduct is likely prologue.

Evidence pertaining to the lack of Smith's parental abilities favors the finding that termination is in A.S.'s best interest.

14

**5.     The Programs Available to Assist Smith**

As to this factor, Smith states, "There is no competent evidence about this as to CPS." Smith misconstrues this factor. Other than stating that he plans on attending an out-patient drug treatment program when he is released from prison, there is no evidence that Smith has taken any steps to better his parenting skills. As stated above, Smith contends in his brief that he has taken parenting classes while in prison; however, he offered no evidence to substantiate his claim or to show that any such courses have had a beneficial impact on previous participants in such a program. The evidence on this factor favors a finding that it is in A.S.'s best interest to terminate Smith's parental rights.

**6.     Smith's Plans for A.S.**

Smith maintains that he has "demonstrated his desire to reform by entering Calvary[7] and provide a good home for his children." There is little doubt that Smith's attendance in a drug treatment program would be in A.S.'s best interest; however, his intentions are, at best, speculative, and his past performance of failing the opportunities given him to avoid prison indicate that Smith is not likely to meet with success. Smith has offered no evidence regarding specific plans he has entertained to provide a good home for A.S. in the future or how he plans to provide financial or emotional support to A.S. in the future. This factor, which rests solely on the mind-set of Smith as to his future intention, bears slightly in favor of a finding that termination would not be in A.S.'s best interest, but only if we take Smith's avowals as totally believable.

---

[7]Smith explains that Calvary is an out-patient drug rehabilitation program.

### 7. The Stability of Smith's Home

There is no evidence that Smith has or will be able to provide a permanent and stable home for A.S. In fact, the record shows Smith's plan upon release from prison is to reside in a halfway house. As a general rule, a halfway house would not be able to provide A.S. with even temporary lodging. On the other hand, A.S.'s placement family has cared for A.S. approximately ten months in the family's home. They have also made known to DFPS that their home and family will accommodate A.S. for the long term. The past history of the irresponsibility of Smith to provide stability for A.S. and his stated intention to enter a halfway house upon exiting prison both, together with the stability in the placement family, weigh strongly in favor of termination being in A.S.'s best interest.

### 8. Smith's Acts or Omissions Which May Indicate that the Existing Parent-Child Relationship is Not a Proper One

The record shows that Smith has been convicted and imprisoned for possession of methamphetamine. As we have already stated, Smith was given the opportunity to care for A.S. when he was placed on unadjudicated community supervision, and he chose not to avail himself of the opportunity. In doing so, Smith left A.S. with Adelle, despite the fact that he knew or should have known she used or abused drugs and despite the fact that he had accused her of behaving in a sexually inappropriate way with A.S. and one of his siblings. The evidence on this factor very strongly suggests that termination is in the best interest of A.S.

### 9. Smith's Excuses for His Acts or Omissions

In his brief, Smith states that "[t][he record is rife with excuses for [his] not being able to work [the DFPS] plan and have his children reunited with him. Multiple incarcerations. [DFPS]

16

dropping the ball in setting up services, serving [him], or communicating with [him]. Those are but a few." Smith misinterprets this factor. Although Smith's ability to "work [the DFPS] plan" was no doubt hindered due to his confinement in prison, he has not shown the nature of the course he has taken to compensate for that problem. Moreover, there is no evidence that he attempted to maintain any type of contact with A.S. (either by letter or by telephone) during his confinement or that he showed any interest in A.S.'s progress during that time.

As we have already stated, the trial court having jurisdiction over Smith's criminal case allowed Smith to be placed on community supervision rather than being incarcerated. This would have allowed Smith the opportunity to remain free from confinement and to engage in a productive life raising his child. It was Smith's own acts or omissions that made it impossible for him to "work [the DFPS] plan." Smith states that DFPS "dropp[ed] the ball in setting up services." Contrary to his claim, it was not DFPS that dropped the ball; instead, it appears that it was Smith who dropped the ball.

After weighing the evidence as it relates to the nine *Holley* factors, we conclude there is legally and factually sufficient, clear and convincing evidence to support the trial court's finding that termination of Smith's parental rights is in A.S.'s best interest.

## V.      Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      September 23, 2016
Date Decided:       October 18, 2016