

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00087-CV
_____

IN THE INTEREST OF A.L.R.M. AND W.N.P.M., CHILDREN

---

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 83293

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

After a jury trial in Hunt County, Texas, the trial court terminated the parental rights of Ann and Sid to their two minor children, Alan and Wendy.[1] Pursuant to the jury's verdict, the trial court found that the termination of Ann's rights was warranted pursuant to Section 161.001(b)(1)(D), (E), and (O) of the Texas Family Code, and that the termination of her rights was in the best interests of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (O), 161.001(b)(2) (West Supp. 2017). The Department of Family and Protective Services (the Department) was appointed the permanent managing conservator of the children.

On appeal, Ann argues that the evidence is legally insufficient to support the trial court's findings that termination was warranted under subsections (D), (E), and (O).[2]

Because we find sufficient evidence to support termination under subsection (D), we affirm the trial court's judgment.

---

[1]In order to protect the children's privacy, we will refer to the appellant mother by the pseudonym Ann, to the two men named as the children's presumed fathers as Sid and James, and to the children as Alan and Wendy. *See* TEX. R. APP. P. 9.8. Though James filed an unrevoked or irrevocable affidavit relinquishing his parental rights, the trial court also terminated his parental rights to the children. This appeal pertains only to Ann's parental rights.

[2]Ann preserved her legal sufficiency challenge as to both ground and best interests by filing a motion for directed verdict, but in her brief on appeal, she does not appear to challenge the trial court's findings that termination was in children's best interests. Nevertheless, to the extent her brief could be interpreted in that fashion, she waived that point by failing to cite to any authorities and to the record to support that claim. *See In re D.V.*, No. 06-16-00065-CV, 2017 WL 1018606, at *8 (Tex. App.—Texarkana Mar. 16, 2017, pet. denied) (mem. op.) (holding that father waived any appellate claim that termination of his parental rights was not in the child's best interest by failing to support his brief with citations to authorities and the record). Moreover, where, as here, there is no motion for new trial raising factual sufficiency challenges to the jury's verdict, "[f]actual sufficiency is not preserved for appeal." *In re A.L.*, 486 S.W.3d 129, 130 (Tex. App.—Texarkana 2016, no pet.) (quoting *In re O.M.H.*, No. 06-12-00013-CV, 2012 WL 2783502, at *2 (Tex. App.—Texarkana July 10, 2012, no pet.) (mem. op.) (footnote omitted) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Therefore, we will only consider whether the evidence is legally sufficient to support the trial court's findings that grounds for termination under Section 161.001(b)(1) were proven.

## I.     Procedural and Factual Background

Ann and Sid are the mother and father of Alan and Wendy.[3]   Due to a conviction for robbery, Sid was incarcerated prior to the children's removal, and he remained incarcerated for the entirety of the proceedings.[4]   At the time of the July 2016 termination proceedings, Alan was four years old and Wendy was almost three years old.

On March 27, 2016, the Department received a report that Alan and Wendy had been diagnosed with scarlet fever and strep throat and that Ann was abusing drugs and had failed to get the children proper medical attention.  In early April, a Department investigator met with Ann. Ann admitted that the children had strep throat, but she denied that Wendy had scarlet fever, claiming that the child only had scabies.  During the meeting, Ann also admitted that she had a history of using marihuana, heroin, and methamphetamines.  The Department opened a family-based service plan, and the court ordered her to comply with the Department's directives and complete specific social services, such as refraining from criminal activity, submitting to drug and alcohol screenings, maintaining stable housing and income, completing parenting classes, abstaining from drugs and alcohol, attending Narcotics Anonymous/Alcoholics Anonymous (NA/AA) meetings, and completing intensive outpatient (IOP) and supportive outpatient (SOP) drug and alcohol abuse recovery classes.

After an emergency family meeting in May 2016 failed to identify suitable relatives with whom the children could be placed, the children were removed from Ann's care and placed in

---

[3]Though the Department's pleadings name two different men as the presumed fathers of both children, Sid testified that he was their father.

[4]Sid received a seven-year sentence.

temporary foster care. At the time the children were placed in temporary foster care, they both had lice, Wendy had scabies and was recovering from scarlet fever, and Alan had to "have eleven of his teeth completely capped because they were just shells." Both of the children needed vaccinations, as Wendy had never been vaccinated and Alan had not received proper vaccinations in two years. By October 2016, the Department's goal changed from family reunification to termination of parental rights and adoption because for a period of one month, Ann could not be contacted by the Department or her drug counselor, she had not begun IOP/SOP, and she had failed to maintain stable housing or employment.

The termination proceedings were heard before a Hunt County jury in July 2017. Ann admitted to the jury that she and Sid had been addicted to opiates for three years and that her other child was in the custody of her ex-husband due to her drug use. She started using hydrocodone, a prescription opiate pain medicine, after she had Alan, and she continued using the drug for about a year. In March 2014, when her doctor would no longer fill her prescription, she and Sid continued to obtain hydrocodone without a prescription from a friend. She testified that she took hyrocodone twice daily until Wendy was born, but later in her testimony, she denied taking the drug while she was pregnant with Wendy.

Ann and Sid testified that they began using heroin in early 2015 and that they used it every day. Sid claimed that they spent $200.00 a week for their heroin and another $20.00 a week for marihuana. Ann and Sid both admitted that they used and were under the influence of drugs, including heroin and methamphetamines, while Alan and Wendy were at home and in their care. Ann agreed that her drug use endangered the children and affected her ability to care for them.

4

The couple's attempts to stop using heroin through the use of Suboxone failed, though Ann conceded that they did not consistently fill their prescription for this withdrawal medication or take it as prescribed. In December 2015, she decided to stop taking heroin and started taking methamphetamines in order to "deal with the [heroin] withdrawals." Ann testified that she only used methamphetamine for a few months and claimed she stopped in February 2016. Ann admitted that the children were removed from her care due to her drug use.

The drug-related history Ann gave to Nate Newell, the Department's conservatorship caseworker for this case, and Barbara Bowers, Ann's substance-abuse counselor, significantly differed from Ann's testimony at trial. Newell and Bowers testified that Ann told them that she began using heroin several years before this case began and stopped using heroin in February 2016, but upon quitting heroin, she started using methamphetamine, which she stopped using in March or April 2016.

Ann also testified that there was domestic violence between Sid and her. Sid "grabbed . . . [,] shoved . . . [, and] pushed" her. It happened "maybe three" times. Sid denied her accusation that he was violent toward her.

Ann completed several of the court-ordered services. She completed parenting classes and IOP/SOP classes, and her drug tests throughout the proceedings were negative. She attended NA/AA, but she failed to attend the required number of sessions in three different months. On the other hand, Ann failed to complete individual counseling, she admitted to drinking alcohol two or three times, she twice tested positive for alcohol, and on March 2, 2017, she was arrested for driving while intoxicated (DWI) after she was involved in a car accident. After the arrest, she was

unsuccessfully discharged from IOP/SOP, but she completed the courses a couple of weeks prior to trial.

When asked about her arrest for DWI, Ann asserted her Fifth Amendment privilege against self-incrimination. She was specifically asked whether she drove while intoxicated, caused a car accident, failed field sobriety tests, had her blood drawn for testing, endangered her life and the lives of others on the road, and told the officer that she was going to kill herself because a DWI would cause her to lose her children.[5]

Ann said she could not afford her own housing, so after the children were removed, she moved into her father and stepmother's home. She continued to live there despite being told repeatedly by the Department that the home was not appropriate and the children could not be returned there. She would stay with her aunt at times when her father and stepmother were drunk and fighting. At various times during this case, Ann claimed to be living in a rent house, but she was unable to provide the address, and several attempted visits to the home by Newell and the Court Appointed Special Advocates for the children were unsuccessful. There was testimony that she was evicted in March 2017 for failing to timely pay her rent and that she moved back in with her aunt, which Ann admitted showed the unstable nature of her housing. At the time of trial, she was living in the home of her father and stepmother even though a pending family violence charge against her stepmother rendered the home inappropriate for children.

---

[5]Because she asserted her Fifth Amendment privilege, the jury was entitled to draw negative inferences against her on each question. *See Lozano v. Lozano*, 52 S.W.3d 141, 148–49 (Tex. 2001); *In re C.J.F.*, 134 S.W.3d 343, 352–53 (Tex. App.—Amarillo 2003, pet. denied).

6

Ann's employment during the case was sparse and sporadic. She initially worked part time in a family restaurant, but she earned little money. She worked in a fast food restaurant for a few months, but she quit. She cleaned a friend's home once or twice per month for $80.00 to $100.00, and near the time of trial she had begun working at a telemarketing company.

During the children's time in foster care, their health and behavior "drastically" improved. In her initial foster home, separated from Alan, Wendy became more independent and "came out of her shell." In his placement, Alan received play, speech, occupational, and behavioral therapy, and his behavior improved to the point that Wendy was later placed in the same home. That home is now a prospective adoptive placement. Newell testified that the children are bonded with the foster family and that they "call the foster parents mom and dad."

After hearing the testimony of a dozen witnesses and the arguments of counsel, the jury decided that the parental rights of Ann and Sid to Alan and Wendy should be terminated. Pursuant to the jury's verdict, the trial court entered an order finding that termination of Ann's rights was warranted pursuant to Section 161.001(b)(1), subsections (D), (E), and (O), and that the termination of her rights was in the best interests of the children. TEX. FAM. CODE §§ 161.001(b)(1)(D), (E), (O), 161.001(b)(2). The Department was appointed the permanent managing conservator of the children. Ann filed this appeal.

## II.     Analysis

### A.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make

7

decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id*. at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2005, no pet.); *see* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2017); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

"Only one predicate finding under Section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). "If the trial court finds multiple predicate grounds, we will affirm if the evidence supports any one of the grounds." *In re M.C.*, 482 S.W.3d 675, 681 (Tex. App.—Texarkana 2016, pet. denied); *see C.A.J.*, 459 S.W.3d at 179; *K.W.*, 335 S.W.3d at 769.

### B. The Evidence Is Legally Sufficient to Support Termination Under Subsection (D)

In her sole point of error, Ann contends that the evidence is legally insufficient to support the trial court's finding that termination was warranted under subsections (D), (E), and (O). We first examine the legal sufficiency of the evidence to support subsection (D).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

The trial court found that Ann knowingly placed or knowingly allowed Alan and Wendy to remain in conditions or surroundings which endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). "Under this Section, we must examine the time before the [child]'s removal to determine whether the environment [of the home] posed a danger to the child's physical or emotional well-being." *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.— Texarkana 2004, no pet.).

"A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards." *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). Subsection (D) permits termination of parental rights based on a single act or omission by the parent. *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied). "[A]busive or violent conduct by a parent or other resident of a child's home can produce an environment that endangers the physical or emotional well-being of a child." *In re B.E.T.*, No. 06-14-00069-CV, 2015 WL 495303, at *5 (Tex. App.— Texarkana Feb. 5, 2015, no pet.) (mem.op.) (quoting *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.— Tyler 1991, writ denied)). "Similarly, 'a parent's failure to remove himself and his children from a violent relationship endangers the physical or emotional well-being of the children.'" *Id.* (quoting *In re I.G.*, 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.)) (citing *D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 354 (Tex. App.—Austin 1993, no writ), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002) ("finding evidence of child's residence in unstable household where violence frequently occurred and where ex-felons engaged in ongoing criminal activity resided was sufficient to sustain termination based on finding parent

allowed child to remain in surroundings that endangered physical or emotional well-being")).

"Moreover, illegal drug use by a parent likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *L.E.S.*, 471 S.W.3d at 925 (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *N.B.*, 2012 WL 1605457, at *9).

Here, it was undisputed that Ann had a long history of drug abuse. Ann admitted that, from the time the children were born until just prior to their removal by the Department, she and Sid regularly abused hydrocodone and used illegal drugs, including heroin and methamphetamines, almost every day while the children were in the home and under their care. Ann conceded that her drug use endangered the children and affected her ability to care for them. *See In re J.T.G.*, 121 S.W.3d at 125; *see N.B.*, 2012 WL 1605457, at *9. Prior to the children's removal, there was evidence that the children's environment actually harmed their physical and mental well-being, as both children had lice, needed vaccinations, and were suffering from serious medical conditions without being treated. There was also evidence of domestic violence in the home, but Ann failed to remove herself or her children from her sometimes violent relationship with Sid. *See In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied); *I.G.*, 383 S.W.3d at 770.

Considering the evidence in the light most favorable to the findings, we find that the jury could have reasonably formed a firm belief or conviction that, prior to the children's removal, Ann knowingly placed the children, or allowed them to remain, in a home environment that posed a danger to their physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); s*ee In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.) (evidence was legally

11

sufficient to support the termination of Ann's parental rights under subsection (D)). Having found legally sufficient evidence to support one ground for termination, we need not address the remaining grounds. *See O.R.F.*, 417 S.W.3d at 37. Accordingly, we overrule this point of error and affirm the trial court's judgment.

## III.     Conclusion

For all of the foregoing reasons, we affirm the judgment of the trial court.


Ralph K. Burgess
Justice


Date Submitted:        January 5, 2018
Date Decided:          February 2, 2018