

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00074-CV

IN THE INTEREST OF K.B. AND Z.B., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 19C1035-CCL

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Following a bench trial, the trial court terminated Mother's parental rights to K.B. and Z.B.[1] on four grounds specified in the Texas Family Code—Section 161.001(b)(1), subsections (D), (E), (N), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). In her appeal, Mother challenges the sufficiency of the evidence as to grounds (D) and (E). Because we find the evidence of these grounds is legally and factually sufficient, we affirm the trial court's judgment.

## I.      Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children." *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). Based on this standard, we are required to "engage in an exacting review of the entire record to determine if the

---

[1] To protect the confidentiality of the children, we refer to appellant as Mother and to the children by initials. *See* TEX. R. APP. P. 9.8(b)(2).

2

evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *A.B.*, 437 S.W.3d at 500).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm

belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26)).

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)). Yet, because the trial court's findings under grounds D and E "may have implications for . . . parental rights to other children," due process demands that we review the trial court's findings under each of those grounds. *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).

## II.     The Evidence at Trial

Tonya Baker, an investigator with the Department of Family and Protective Services (Department), testified that the Department received an intake in July 2019 alleging neglectful supervision and drug use by Mother. Mother had left the children with an unidentified male

relative but never returned for them. The relative eventually contacted the children's great-grandmother to pick them up. Although Mother was not there, Baker was able to locate the children at the home of their great-grandmother. Mother had been there earlier and had attempted to leave with the children but did not have car seats for them or a place for them to stay. For reasons not apparent from the record, officers from the Nash Police Department (NPD) were also present at the great-grandmother's home and would not permit Mother to leave with the children.

In an attempt to locate Mother, Baker went to the NPD. Officers there confirmed their involvement and asked Baker to contact them if Mother tried to retrieve the children. Baker then went to the Motel 6 to locate Mother, only to discover that Mother had checked out.[2] Baker was unable to locate Mother but received word from the NPD at the end of the day that Mother had returned to the great-grandmother's house. When Baker arrived at the great-grandmother's house, it appeared to her that Mother was under the influence. Mother initially denied drug use, but eventually admitted to Baker that she used marihuana and methamphetamine. Mother's drug test at the time of removal was positive for methamphetamine.

Following the issuance of an emergency removal order, the children were placed in a foster home in Dallas.[3] Although Baker was unaware of whether Mother used drugs in the children's presence, both children tested positive for methamphetamine at the time of removal. Baker did not know who was caring for the children when they were exposed to

_____

[2]According to Baker, Mother had been living at the Motel 6 and was waiting for a friend to get her another room.

[3]Z.B. was eleven months' old at the time of removal, and K.B. was twenty-two months' old.

methamphetamine. The option of a family placement for the children was not considered because Mother indicated that all her family members used illegal substances.

Cherell Stuart, a Department conservatorship worker, provided Mother with a family plan so that she could work services to lead to reunification with the children. The family plan required completion of a drug assessment through the East Texas Council on Alcohol and Drug Abuse (ETCADA), parenting classes, drug testing, and psychological counseling. Mother completed her psychological evaluation but submitted to drug testing only once during the pendency of the case. Although Mother's October 2019 urinalysis was negative for the presence of illicit drugs, her hair sample tested positive for amphetamine, methamphetamine, and marihuana.[4] She failed to complete the ETCADA drug assessment and did not complete parenting classes. Mother did not maintain contact with the Department and did not make any effort to complete her court-ordered services. Mother, likewise, demonstrated an inability to provide the children with a safe and stable environment.

Jessica Barnett, a Court Appointed Special Advocates (CASA) volunteer, testified that, despite her attempts to contact Mother, she never received a response. At the time of trial, the children were thriving in their foster placement, and the foster parents wanted to adopt them.

---

[4]Mother's brief indicates that Mother underwent only one drug test. Yet, Baker testified, "[W]hen the emergency removal was recommended, she met us at the office, and she agreed to go ahead and drug test at that point." The removal took place in July. Stuart, the conservatorship worker who was brought in after the emergency removal, testified that Mother "also did submit to one drug test, both a hair and UA on 10/4, and her hair was positive for amphetamines, methamphetamine, and marijuana, and her UA was negative." This drug test was performed in conjunction with the family service plan. Even though the record might be somewhat ambiguous on this point, Mother nevertheless admitted to Baker at the time of removal that she used marihuana and methamphetamine. The subsequent October drug test showed that Mother continued to use methamphetamine and marihuana during the pendency of the case.

6

## III.    Sufficient Evidence Supports Termination Under Grounds D and E

Termination under ground D is proper when there is clear and convincing evidence that a parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child."  TEX. FAM. CODE ANN. § 161.001(b)(1)(D).  "A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards."  *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). "[S]ubsection (D) permits termination [of parental rights] based on a single act or omission [by the parent]."  *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.); *see In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied).  "Inappropriate, abusive, or unlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D)."  *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.).  "Endanger" means, for purposes of grounds D and E, "to expose to loss or injury; to jeopardize."  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see L.E.S.*, 471 S.W.3d at 923.

Termination under ground E is proper when there is clear and convincing evidence that the parent "engaged in conduct . . . which endangers the physical or emotional well-being of the child."  TEX. FAM. CODE ANN. § 161.001(b)(1)(E).  "It is not necessary that the conduct be directed at the child or that the child actually suffer injury."  *L.E.S.*, 471 S.W.3d at 923.  "Under subsection (E), it is sufficient that the child's well-being is jeopardized or exposed to loss or

injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 367). "Further, termination under subsection (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.))). Because they are interrelated, we consolidate our examination of grounds D and E.

The record plainly demonstrates that Mother struggled with drug addiction. She admitted to using marihuana and tested positive for methamphetamine at the time the Department removed the children from her care. Mother again tested positive for methamphetamine three months after the removal and did not submit to further drug testing. She refused to participate in an ECTADA drug assessment and showed no interest in working services in order to be reunited with her children. "'Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct' by a parent sufficient to support a petition to terminate parental rights." *In re O.R.F.*, 417 S.W.3d 24, 38 (Tex. App.—Texarkana 2013, pet. denied). Mother's failure to "remain drug-free while under the Department's supervision will support a finding of endangering conduct under subsection (E) even if there is no direct evidence that the parent's drug use actually injured the child" "[b]ecause it exposes the child to the possibility that the parent may be impaired or imprisoned." *Id.* at 39 (quoting *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). "Moreover, illegal drug use by a parent likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *L.E.S.*, 471

8

S.W.3d at 925 (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.));
*see In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8,
2012, no pet.) (mem. op.). "Indeed, the effect of drug use on a parent's life and 'ability to parent
may establish and endangering course of conduct.'" *In re K.D.*, No. 06-17-00068-CV, 2017 WL
5504407, at *5 (Tex. App.—Texarkana Nov. 17, 2017, no pet.) (quoting *In re J.L.B.*, 349 S.W.3d
836, 848 (Tex. App.—Texarkana 2011, no pet.)). In addition to the evidence showing that
Mother struggled with a drug addiction and used methamphetamine after the Department's
intervention, the evidence also indicates both children tested positive for methamphetamine at
the time of their removal. And, although Mother claimed that all of her relatives used illicit
drugs, she left the children in the care of an unidentified male relative.

After having considered the entire record, we conclude that the evidence is legally and
factually sufficient to support termination of Mother's parental rights under grounds D and E.[5]

---

[5]Mother argues that this case is much like *In re J.L.G.*, No. 06-16-00087-CV, 2017 WL 1290895 (Tex. App.—
Texarkana Apr. 6, 2017, no pet.) (mem. op.), in which we concluded that the evidence was legally insufficient to
support the trial court's findings under grounds (D) and (E). In that case, Father used methamphetamine once with
Mother and tested positive for that substance once in a previous CPS case. However, there was "no evidence that
[Father] used methamphetamine more than once . . . [and] there [was] no evidence of [Father's] history of drug use
or that he ha[d] used drugs since using them with [Mother] that one time." There was likewise "no evidence that
[Father] occupied a residence with [Mother] or J.L.G. or that he used illegal drugs in the presence of J.L.G." *Id.* at
*8. The facts here are different in that Mother was the children's primary caregiver, Mother was using
methamphetamine at the time of removal, and the children had methamphetamine in their system at the time of
removal.

## IV.     Conclusion

We affirm the trial court's judgment.


                                        Scott E. Stevens
                                        Justice

Date Submitted:      December 28, 2020
Date Decided:        December 29, 2020